1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    JOHN HENRY HART,

11              Plaintiff,                    2:10-cv-1672-KJM-EFB PS

12        vs.

13    PAE GOVERNMENT SERVICES
       INCORPORATED,
14
                Defendant.              FINDINGS AND RECOMMENDATIONS
15    _____/

16          This case, in which plaintiff is proceeding *pro se* and *in forma pauperis*, is before the

17    undersigned pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C.

18    § 636(b)(1).  Defendant and plaintiff each move for summary judgment.  Def.'s Mot. for Summ.

19    J., Dckt. No. 62; Pl.'s Mot. for Summ. J., Dckt. No. 66.[1]  For the reasons stated herein, the

20    defendant's motion must be granted and plaintiff's motion denied.

21    I.     BACKGROUND

22          Plaintiff initiated this action on June 29, 2010 against PAE Government Services

23    Incorporated, alleging that defendant discriminated against him on the basis of age in violation

24    of the Age Discrimination in Employment Act ("ADEA") when it failed to hire plaintiff for a

25    _____

26          [1] For ease of reference, all citations to page numbers reference the page numbers assigned
       by the court's case management and electronic case file (CM/ECF) system.

1

1   Transportation Supervisor/Manager position, and that plaintiff was harassed by management

2   when he filed a complaint.  Compl., Dckt. No. 1.  In August 2010, the court granted plaintiff's

3   application to proceed *in forma pauperis* and directed the U.S. Marshal to serve plaintiff's

4   complaint on defendant.  Dckt. No. 3.  Defendant answered the complaint in December 2010,

5   denying all liability and asserting various affirmative defenses.  Dckt. No. 9.  Plaintiff then filed

6   an amendment to his original complaint in January 2011 only to clarify the damages he sought in

7   his original complaint.  Dckt. No. 18.  Defendant filed an answer thereto.  Dckt. No. 20.

8        Defendant now moves for summary judgment on plaintiff's claims.  Dckt. No. 62.

9   Plaintiff opposes the motion.[2]  Dckt. Nos. 64, 70, 71.  Plaintiff also moves for summary

10  judgment, Dckt. No. 66, and defendant opposes that motion, Dckt. No. 67.

11  II.   RELEVANT FACTS

12        A.   Background About Defendant[3]

13        Defendant provides global infrastructure and logistical support, and base operating

14  services to the United States government and other organizations around the world.  Decl. of Iris

15  M. Berry ("Berry Decl."), ¶ 4.  In or around September 2007, defendant entered into a Base

16  Operating Services Contract ("BOS Contract") with the Navy to provide logistical and base

17  ────────────────

18        [2] Plaintiff originally failed to file an opposition to the motion, so the court ordered him to
    show cause why he should not be sanctioned for that failure and directed plaintiff to file an
19  opposition or a statement of non-opposition to the motion.  Dckt. No. 63.  Plaintiff then filed an
    opposition to the motion and a response to the order to show cause.  Dckt. Nos. 64, 65.  As a
20  result, the court discharged the order to show cause.  Dckt. No. 69.  However, because plaintiff's
    opposition did not comply with the Federal Rules of Civil Procedure or this court's Local Rules,
21  plaintiff was directed to file a revised opposition.  *Id.*  Plaintiff was reminded of his obligations
    under Federal Rule of Civil Procedure 56 and Local Rule 260.  *Id.*  Plaintiff then filed two
22  further oppositions.  Dckt. Nos. 70, 71.  Although none of plaintiff's oppositions are in strict
    compliance with the Rules, in light of plaintiff's pro se status, all three oppositions were
23  considered by the court.  Additionally, because one of plaintiff's oppositions, Dckt. No. 64,
    references plaintiff's earlier motions for summary judgment, Dckt. Nos. 6, 22, 38, and 60, those
24  documents were considered by the court, as well.

25        [3] Significant portions of this statement of facts are taken directly from the statement of
    facts in defendant's points and authorities and separate statement of undisputed facts, which
26  unless otherwise indicated, plaintiff has not disputed.  Dckt. No. 62-1 at 3-9; Dckt. No. 62-2.

operating services at the Navy's military installation ("Camp Lemonier") in Djibouti, Africa. Berry Decl. ¶ 6.  As part of the BOS Contract, the Navy identified job positions which defendant was authorized to hire to perform the agreed-upon services.  Berry Decl. ¶ 7.  Thus, staffing was driven by the needs of the Navy.  Deposition of John Henry Hart ("Hart Dep.") at 204; Berry Decl. ¶ 7.  If defendant hired for a job position not identified in the BOS Contract, the Navy would not be obligated to compensate defendant for those labor costs.  Hart Dep. at 79-80; Berry Decl. ¶ 7.

B.      Defendant Hires Plaintiff As a Crane Operator

On or about August 31, 2007, plaintiff, who was employed at the time as a crane operator for KBR, the previous base operations service provider, signed a one year contract for employment as a crane operator with defendant.[4]  Hart Dep. at 38, 51, 52, 54, 66.  The effective termination date of his employment contract was August 31, 2008.  *Id.* at 66.  At the time, plaintiff was 64 years old.  *Id.* at 11.

Defendant also hired Don Montgomery ("Montgomery") (the former transportation supervisor at KBR and plaintiff's former manager) as defendant's transportation supervisor and plaintiff continued to report to him.  *Id.* at 63; Berry Decl. ¶ 11.

C.      Montgomery Resigns as Transportation Supervisor

In or around December 2007, Montgomery resigned from employment with defendant, creating a vacancy for the transportation supervisor position.  Hart Dep. at 78-79.  Before departing, Montgomery appointed Albert Barnes ("Barnes"), a truck driver, as the interim transportation supervisor.  *Id.* at 85-86; 212-213.  Although plaintiff speculates that Montgomery favored Barnes because they were related and selected him because he was lazy (and the

---

[4] On or about January 30, 2008, plaintiff signed an employment contract with PAE Singapore, a wholly owned subsidiary of PAE Government Services, Inc. (superseding his contract with PAE Government Services, Inc.).  Hart Dep. at 73-75, 77; Berry Decl. ¶ 10; Ex. A. As of February 1, 2008, plaintiff was no longer employed by PAE Government Services, Inc. Hart Dep. at 75-76; Berry Decl. ¶ 10.

3

1  supervisor position did not require much work), plaintiff concedes that he had no objection to

2  Barnes' appointment.  *Id.* at 81-82, 86, 92.

3        Simultaneously, Darryl Harris ("Harris"), who had been Montgomery's direct supervisor,

4  appointed plaintiff as the co-interim transportation supervisor.  *Id.* at 62, 87-90, 201.  As such,

5  plaintiff and Barnes alternated as the interim transportation supervisor, while continuing to

6  perform their respective regular duties as a crane operator and truck driver.  *Id.* at 95, 207; Berry

7  Decl. ¶ 12.  Neither plaintiff nor Barnes received any additional pay for performing any interim

8  transportation supervisor duties.  Hart Dep. at 84, 87; Berry Decl. ¶ 12.  Plaintiff and Barnes

9  occupied this role until defendant could permanently fill the position. Berry Decl. ¶ 12.

10        D.    <u>Plaintiff Applies to the Open Job Requisition for Transportation Supervisor</u>

11        On February 25, 2008, defendant opened a job requisition for the transportation

12  supervisor position.  Berry Decl. ¶ 13, Ex. B.  The job requisition was posted on defendant's

13  internal job posting board and external websites. Hart Dep. at 95-96, 98; Berry Decl. ¶ 13.

14  Plaintiff submitted his application for the transportation supervisor position.  Hart Dep. at 96.

15  Approximately 80 other candidates also applied for the position, including Barnes.  *Id.* at 116-

16  17; Berry Decl. ¶ 13.

17        E.    <u>Plaintiff Complains that He Is Being Denied an Interview Because of His Age</u>

18        On April 18, 2008, plaintiff sent an email to Harris (his supervisor and hiring manager)

19  seeking clarification as to who was selected for the transportation supervisor position.  Hart Dep.

20  at 151-52.  Harris acknowledged receiving resumes from plaintiff and others, and that he would

21  be scheduling interviews shortly.  *Id.* at 155.

22        On April 28, 2008, plaintiff sent an email with the subject line "Age Discrimination" to

23  Iris Berry ("Berry"), defendant's local human resources manager, inquiring as to the status of

24  the transportation supervisor position.  *Id.* at 151-52.  In the email, plaintiff said that he believed

25  none of the 80 applicants had the same qualifying criteria as he did.  *Id.* at 162.  He also

26  concluded that he was "beginning to believe there is an intended stalling time is [sic] amounting

4

to age discrimination." *Id.* at 151-52.  At the time he prepared the email, plaintiff admits that he did not know the identities of the other 80 applicants.  *Id.* at 161.  He was (and still is) unaware which of the 80 applicants had been considered, their ages, or who was making the decisions. *Id.* at 134, 166, 167.  Plaintiff also admits that although nobody had been hired at the time he wrote the email, he believed that there was age discrimination because of "conversations that go around and documentation that had to be put in place."  *Id.* at 165-66.  Even though plaintiff concedes that he does not know the identities of the other 80 candidates, he still believes he was the most qualified candidate.  *Id.* at 136.

On April 28, 2008, Berry responded to plaintiff that she had not yet been notified by the hiring manager that a selection had been made.  *Id.* at 168-69; Berry Decl. ¶ 14, Ex. C.  Berry invited plaintiff to submit a formal written complaint about the alleged age discrimination.  Hart Dep. at 169.

F.    Plaintiff Submits A Written Complaint

On or about May 2, 2008, plaintiff submitted a written complaint entitled "Age Discrimination Complaint."  *Id.* at 169-70; Berry Decl. ¶ 15, Ex. D.  In the complaint, plaintiff stated that he had been "systematically overlooked, on purpose, denying [him] an opportunity to accept advancement or promotion, in order to place a younger, less experienced person in the job of Transportation Supervisor."  Hart Dep. at 172.  Plaintiff admits that when he wrote that statement, he was not referencing any particular person, but if there had to be a specific reference, it would be Barnes.  *Id.*  Plaintiff further admits that as of the date he prepared his written complaint, he did not know whether defendant had in fact selected a candidate for the transportation supervisor position, and he also had no knowledge of which applicants were still being considered by defendant.  *Id.* at 174-75.

////

////

////

G.    Defendant Interviews Plaintiff for the Transportation Supervisor Position

On May 10, 2008, Harris identified candidates to be interviewed for the transportation supervisor position, and selected plaintiff for an interview.[5]  Berry Decl. ¶ 16.  On the same date, however, the Navy imposed a hiring freeze, placing all Djibouti job requisitions "on hold."[6]  Id. ¶ 17.  Although defendant continued the recruiting process, it did not make any offers of employment pending the hiring freeze.  Hart Dep. at 200; Berry Decl. ¶ 17.

On May 13, 2008, Brian Campbell (another supervisor) interviewed plaintiff.  Hart Dep. at 157, 179.  Plaintiff believes that Campbell recommended him over Barnes because Campbell said at the interview, "I don't see anybody else better qualified."  Id. at 158.  Plaintiff subsequently stated that Campbell never actually said this, id. at 181, and indicated that he does not know who interviewed Barnes or if Campbell had even made a recommendation to Harris as to whom defendant should hire as the transportation supervisor.  Id. at 143, 157-58, 179-80, 184.

On May 18, 2008, defendant informed plaintiff that a decision had not been made yet and that it still needed to interview external candidates.  Id. at 177-78; Berry Decl. ¶¶ 14, 18, Ex. C.

H.    Human Resources Meets with Plaintiff About His Age Discrimination Complaint

On May 21, 2008, plaintiff met with Berry and Donia Anaim ("Anaim") (senior generalist) to discuss his complaints of alleged age discrimination.  Berry Decl. ¶ 19; Hart Dep. at 189, 190.  During the meeting, plaintiff said that he had no solid examples of age discrimination.  Berry Decl. ¶ 19; Hart Dep. at 191.  He also retracted his assertion that he was being discriminated against because of his age, but stated that his grievance was against Harris who was "reluctant to move forward with hiring for this position."  Berry Decl. ¶ 19; Hart Dep. at 191.  As of the date of the meeting with Berry and Anaim, plaintiff was unsure if defendant

---

[5] Plaintiff was not aware that Harris had identified 4 out of 80 candidates to be interviewed.  Hart Dep. at 179.

[6] In March 2008, defendant's Program Manager, Joseph Murray, had already begun a "review and justification" audit of all open positions to determine staffing requirements in line with the BOS Contract's statement of work being performed.  Berry Decl. ¶ 17.

had actually selected anyone for the transportation supervisor position.  Hart Dep. at 193-94.

      I.      <u>Defendant Cancels the Transportation Supervisor Position</u>

      As of June 1, 2008, the job requisition for transportation supervisor continued to be "on hold" per the Navy and defendant's Program Manager.  Berry Decl. ¶ 20.  Anaim emailed plaintiff to inform him that the job requisition continued to be "on hold."  Hart Dep. at 194-95; 199-200; Berry Decl. ¶ 20, Ex. E.

      On July 24, 2008, defendant canceled the transportation supervisor job requisition, among others, following the removal of the position by the Navy from the BOS Contract's staffing plan.[7]  Berry Decl. ¶ 21.  Due to the cancellation, defendant did not make an offer of employment or hire any candidate for the transportation supervisor position in 2008.[8]  *Id.*

      J.      <u>Plaintiff Visits Camp Lemonier 60 Days After His Employment Ended</u>

      On or about August 31, 2008, plaintiff's employment agreement expired and he departed from Camp Lemonier.[9]  Hart Dep. at 66, 67.  Approximately 60 days later, he returned for a visit.  *Id.* at 13.  Plaintiff testified that although he does not know if defendant ever made a final decision on the transportation supervisor position, during his visit, someone (he is not sure who) informed him that Barnes was "the supervisor."  *Id.* at 126.  However, plaintiff also admits that it

---

    [7] Plaintiff admits that he unaware that as of July 24, 2008, defendant had canceled the transportation supervisor requisition and that the position had actually been removed from the BOS Contract's Option Year One staffing plan.  Hart Dep. at 204.

    [8] When the "hold" was eventually lifted, defendant opened a new job requisition for transportation supervisor in April 2009.  Berry Decl. ¶ 23, Ex. F.  The job requisition was posted internally and externally to the public.  *Id.*  Plaintiff admits that he did not submit an application or apply to this job requisition.  Hart Dep. at 208, 210-11.  He did not even know that a new requisition was opened in 2009 and did not know who applied.  *Id.* at  208.  Plaintiff does not know who was interviewed, who the interviewers were, who made the hiring decision, and who was ultimately selected in 2009.  *Id.* at 208-09.

    [9] Despite understanding the difference between *interim* transportation supervisor and *permanent* transportation supervisor, plaintiff speculates that as of the date his employment ended, Barnes was selected as the permanent transportation supervisor.  Hart Dep. at 205:4-206:12.  He testified that he believed this because Barnes "walked and talked like a duck."  *Id.* at 206:24-207:5.  However, plaintiff also testified that as of August 30, 2008, Barnes was only the *interim* transportation supervisor.  *Id.* at 197:17-22.

1   is possible that when he visited Camp Lemonier 60 days after his employment ended, Barnes

2   could have still been the interim transportation supervisor. *Id.* at 213.

3   III.   <u>MOTIONS FOR SUMMARY JUDGMENT</u>

4        A.   <u>Summary Judgment Standard</u>

5        Summary judgment is appropriate when it is demonstrated that there exists "no genuine

6   issue as to any  material fact and that the moving party is entitled to a judgment as a matter of

7   law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> 8   always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> 9   "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> 10  believes demonstrate the absence of a genuine issue of material
> fact.

11

12  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

13        Summary judgment avoids unnecessary trials in cases with no genuinely disputed

14  material facts.  *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.

15  1994).  At issue is "whether the evidence presents a sufficient disagreement to require

16  submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

17  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, Rule 56 serves to screen

18  the latter cases from those which actually require resolution of genuine disputes over material

19  facts; e.g., issues that can only be determined through presentation of testimony at trial such as

20  the credibility of conflicting testimony over facts that make a difference in the outcome.

21  *Celotex*, 477 U.S. at 323.

22        Focus on where the burden of proof lies as to the issue in question is crucial to summary

23  judgment procedures.  "[W]here the nonmoving party will bear the burden of proof at trial on a

24  dispositive issue, a summary judgment motion may properly be made in reliance solely on the

25  'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed,

26  summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).  The opposing party must do

1   so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence

2   presented." *Anderson*, 477 U.S. at 248, 252.  If the evidence presented could not support a

3   judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex*, 477 U.S. at 323.

4       In resolving a summary judgment motion, the court examines the pleadings, depositions,

5   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

6   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

7   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

8   drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

9   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

10  predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.

11  Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

12  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

13  some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

14  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

15  trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

16      B.    <u>Defendant's Motion for Summary Judgment</u>

17      1.    <u>Plaintiff's ADEA Claim</u>

18      Defendant moves for summary judgment on plaintiff's ADEA claim, arguing that

19  plaintiff cannot establish a prima facie case of age discrimination, defendant had a legitimate,

20  non-discriminatory reason for not hiring plaintiff, and plaintiff has no evidence of pretext or

21  discriminatory animus.  Dckt. No. 62-1 at 10-17.

22  ////

23  ////

24  ////

25  ////

26  ////

The ADEA makes it unlawful for an employer to discriminate against an individual "because of such individual's age."  29 U.S.C. § 623(a)(1).  Under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), an ADEA plaintiff must first establish a prima facie case of age discrimination.[10]  *See Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A "plaintiff can establish a prima facie case of disparate treatment by demonstrating that he was (1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'"  *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)).  "An inference of discrimination can be established by showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed . . . or by showing that others not in their protected class were treated more favorably."  *Id.* at 1207-08.  On summary judgment, plaintiff's burden of establishing a prima facie case is minimal, not even rising to the level of a preponderance of evidence.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

Once plaintiff has established a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action."  *Diaz*, 521 F.3d at 1207.  "If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination."  *Id.*

---

[10] In 2009, the Supreme Court held that a plaintiff bringing a disparate treatment claim pursuant to the ADEA "must prove, by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-78 (2009).  The Court found that unlike other civil rights statutes, the ADEA "does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor"; thus, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 174, 180.  However, although *Gross* established that the burden of persuasion never shifts to an employer in an ADEA trial, the Ninth Circuit recently concluded that for purposes of a motion for summary judgment only, the burden-shifting analysis utilized in other civil rights contexts is still applicable. *See Shelley v. Geren*, 2012 WL 89215, at *7-8 (9th Cir. Jan. 12, 2012).

a.     Prima Facie Case

Plaintiff alleges that he was subjected to age discrimination because defendant (1) refused to interview him for 90 days, and (2) failed to hire/promote him to the position of transportation supervisor.  Hart Dep. at 118-19, 130-31, 142.

First, plaintiff has failed to establish a prima facie case that defendant's failure to interview him for the transportation supervisor position within ninety days amounted to age discrimination.  Plaintiff has offered no evidence to establish that other younger individuals were treated more favorably than him.  Specifically, although plaintiff alleges that defendant purposefully "delayed" his interview, Hart Dep. at 118-19, and speculates that the alleged delay only applied to him, *id.* at 136-37, plaintiff also admits that Barnes – the only younger individual plaintiff points to as receiving more favorable treatment – was interviewed around the same time as plaintiff.  *Id.* at 158.  Other than conjecture, plaintiff has offered no information and certainly no evidence that individuals outside of his protected class received more favorable treatment with regard to the timing of their interviews.[11]

Plaintiff has also failed to establish a prima facie case that defendant's failure to hire/promote him to the position of transportation amounted to age discrimination, since plaintiff has provided no evidence demonstrating that another younger individual was hired or promoted to that position.  Despite plaintiff's speculation that Barnes was permanently hired as the transportation supervisor, the undisputed facts reveal that the job requisition for transportation supervisor was canceled as of July 24, 2008 and that consequently, nobody was hired as the transportation supervisor, including Barnes.  Berry Decl. ¶ 21.  The only evidence that plaintiff offers in support of his allegation that Barnes was hired as the transportation supervisor is plaintiff's statement that some unidentified person informed him during a visit to Camp

---

[11] Plaintiff alleges that two other individuals (Glen and Marvin) received interviews before him.  Hart Dep. at 134.  However, plaintiff admits that both of those individuals are over the age of 40 and are therefore in the same protected class as plaintiff.  *Id.* at 133, 136, 177.

Lemonier 60 days after his contract ended that Barnes was "the supervisor."[12]  Hart Dep. at 126.

As defendant argues that statement is inadmissible hearsay and lacks foundation.  The alleged

declarant is unidentified and no basis is set forth for whether and how this unidentified person

would have percipient knowledge of the fact asserted.  Regardless, even if the statement were

admissible, plaintiff also stated in his deposition that the statement could have meant that Barnes

was still only the *interim* transportation supervisor.  *Id.* at 126, 201, 213.  Moreover, defendant's

undisputed evidence demonstrates that defendant did not hire Barnes, or anyone else, as the

transportation supervisor in 2008 because the job requisition had been canceled.[13]  Berry Decl.

¶ 21.

////

---

[12] Plaintiff contends in his opposition that human resources records "will show" that Barnes was officially named transportation supervisor shortly after plaintiff left in September or October 2008.  Dckt. No. 64 at 2, 3.  However, plaintiff never offers such evidence.  Even if the court were to construe plaintiff's statement regarding undiscovered human resources documents as a motion for a continuance under Rule 56(d), such a motion must be denied.  Rule 56(d) permits a court to deny or continue determination of a motion for summary judgment "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ."  In order to justify a continuance or denial of summary judgment under Rule 56(d), a party must satisfy the following requirements: (1) it has set forth in affidavit form the specific facts it hopes to elicit through further discovery; (2) the facts sought exist; and (3) the sought after facts are essential to oppose summary judgment.  *Family Home & Finance Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  The party seeking the continuance must also show that it diligently pursued previous opportunities for discovery.  *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994).  Here, not only does plaintiff not present such an affidavit or declaration, he does not even argue that the summary judgment motion should be continued or denied under Rule 56(d).  Nor does he show that he diligently pursued previous opportunities for discovery.  Significantly, he also has not established that the evidence sought exist.  In fact, as noted above, defendant's local human resources manager submitted a declaration establishing the *opposite* of what plaintiff speculates the undiscovered records would establish.  Berry Decl. ¶ 21 (declaring under penalty of perjury that nobody was hired for the position since the job requisition was canceled).

[13] Although plaintiff speculates in his opposition that the position was not canceled since it would be counterproductive for defendant to cancel the position after receiving and interviewing applicants, he offers no evidence to support that speculation.  *See* Dckt. No 64 at 1.  Additionally, as defendant notes, by failing to respond to defendant's First Set of Request for Admissions, Request No. 10, Cheng Decl. ¶ 3, Ex. B, plaintiff admitted that defendant did not make any employment decisions with respect to him because of his age.  Fed. R. Civ. P. 36(a)(3).

1    Because plaintiff has not demonstrated that any individual outside of his protected class

2    was treated more favorably than him, he has not established a prima facie case of age

3    discrimination.[14]

    b.    <u>Legitimate, Non-Discriminatory Reasons</u>

4

5    Even if plaintiff could establish a *prima facie* case of age discrimination, defendant has

6    offered sufficient evidence to demonstrate that it had legitimate, non-discriminatory reasons for

7    its actions toward plaintiff.  Dckt. No. 62-1 at 14.  First, defendant did not refuse to timely

8    interview plaintiff or otherwise delay in interviewing him for the transportation supervisor

9    position since all interviews were scheduled in or around May 2008.  Berry Decl. ¶ 16.  Second,

10   as previously noted, it is undisputed that defendant did not select plaintiff or any of the

11   applicants for the transportation supervisor position because the job requisition was canceled.[15]

12   *Id.* ¶ 21.

    c.    <u>Evidence of Pretext</u>

13

14   Since defendant has proffered legitimate reasons for its actions toward plaintiff, the

15   burden shifts back to plaintiff to raise a genuine issue of material fact as to whether those reasons

16   were a pretext for discrimination.  The burden may be met "'either directly by persuading the

17   court that a discriminatory reason more likely motivated the employer or indirectly by showing

18   that the employer's proffered explanation is unworthy of credence.'"  *Villiarimo*, 281 F.3d at

19   1062 (quoting *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000)).  If the

20   evidence offered by plaintiff is only circumstantial, the "evidence must be both specific and

21   substantial."  *Id.*

22

23      [14] Defendant also argues that plaintiff cannot establish a prima facie case of age
    discrimination since he cannot show that he suffered an adverse employment action.  Dckt. No.
24   62-1 at 13-14.  However, because defendant's motion for summary judgment is granted on other
    grounds, that issue need not be reached.

25      [15] Additionally, as defendant notes, by failing to respond to defendant's Request for
    Admissions No. 7, Cheng Decl. ¶ 3, Ex. B, plaintiff admitted that defendant's reason for not
26   offering him the transportation supervisor position is legitimate and nondiscriminatory.

1   Here, as noted above, plaintiff has offered no evidence demonstrating that defendant's

2   legitimate, non-discriminatory reasons for its actions toward plaintiff were really a pretext for

3   discrimination.  Although plaintiff speculates that his interview was purposefully "delayed," he

4   admits that Barnes was interviewed around the same time as plaintiff.  Hart Dep. at 158.  He also

5   admits that the other two individuals whom he speculates were interviewed before him were both

6   qualified and over the age of 40.  *Id.* at 124, 133-34, 136, 177, 182.[16]

7   Additionally, although plaintiff speculates that Barnes, who he contends was a younger,

8   less qualified individual, was hired as the transportation supervisor, he has offered no admissible

9   evidence that supports such speculation.  As noted, plaintiff's only purported "evidence" is his

10  statement that someone told him that Barnes was the supervisor when he visited Camp

11  Lemonier.  Plaintiff also admitted that it was possible that Barnes was still only the interim

12  transportation supervisor at that time.  Hart Dep. at 213.  Additionally, plaintiff admitted in his

13  deposition that he does not know who supposedly made the decision to select a candidate for the

14  transportation supervisor position or when that decision was made.  Hart Dep. at 141, 142.  And,

15  as the undisputed evidence demonstrates, he does not have that evidence because nobody was

16  selected for the position; rather, the job requisition was canceled because the Navy removed the

17  position from the parties' BOS Contract.  Berry Decl. ¶ 21.

18  Plaintiff has not offered any evidence that defendant's legitimate, non-discriminatory

19  reasons for its actions toward plaintiff were pretextual.  Accordingly, defendant is entitled to

20  summary judgment on plaintiff's ADEA disparate treatment claim.

21  ////

22  ////

23

24  [16] Moreover, it is clear from plaintiff's deposition that he does not actually believe
    defendant "delayed" his interview because of his age.  Rather, plaintiff believes defendant tried
25  to delay his interview until after the expiration of his contract so that they could "brush" him
    aside, for reasons completely unrelated to his age.  *See* Hart Dep. at 119-20, 121-23, 129, 138-
26  39, 158-59, 192.

2.     Plaintiff's Harassment Claim

Defendant also moves for summary judgment on plaintiff's harassment claim, arguing that plaintiff cannot establish a prima facie case of hostile work environment or harassment since he cannot identify any discriminatory conduct of a physical and verbal nature, he has not presented any evidence that any such conduct was based on a discriminatory animus due to his age or any other protected characteristic, and he has not presented any evidence demonstrating that such conduct is sufficiently pervasive and/or severe to rise to the level of actionable conduct. Dckt. No. 62-1 at 18-20.

"To prevail on an age-based hostile workplace/harassment claim, [a plaintiff] must show that she was subjected to verbal or physical conduct of an age-related nature, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011) (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003)). The plaintiff "must show that the work environment was both subjectively and objectively hostile—that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would have perceived it to be so." *Id.* (citing *Nichols v. Azteca Res. Enters., Inc*., 256 F.3d 864, 871-72 (9th Cir. 2001)). "In making the objective determination, we look to all of the circumstances, including the frequency, severity, and nature (i.e., physically threatening or humiliating as opposed to merely verbally offensive) of the conduct." *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). "The required severity of the conduct varies inversely with its pervasiveness and frequency." *Id.; see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing," . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 798-99 (9th Cir. 2003) (law prohibiting discrimination is not a "general civility code"); *Kortan v. Cal. Youth Auth*., 217 F.3d 1104, 1110 (9th Cir. 2000) (no hostile environment where employee's

16

supervisor referred to a former female superintendent as a "castrating bitch," and a "Madonna," and referred to the plaintiff herself as "Medea;" comments were offensive, but did not affect conditions of employment to sufficiently significant degree necessary for violation of Title VII). Additionally, the plaintiff must prove that the harassment was based on the plaintiff's protected status. *Nichols*, 256 F.3d at 872.

Here, although plaintiff alleges "harassment" and a "hostile work environment," he has not pointed to any incidents that establish any sort of "severe and pervasive" conduct, and has also not identified any evidence indicating that the conduct he complains about was based on his age or other protected characteristic, including his complaint to human resources regarding age discrimination.  In his deposition, plaintiff testified that harassment began after he started to "document everything and "work[] with the people from HR," and that defendant wanted to harass him because he was a "gray-haired old man."  Hart Dep. at 143-44.  However, he then testified that he was *not* harassed because of his gray hair and instead was harassed because"someone or a group of someones [sic] wanted [him] out of there" because they did not want him on a potential bridge project between Djibouti and Yemen.  *Id.* at 145, 150-51.  He testified that the harassment commenced after he spoke with the Program Manager about the potential bridge project, which plaintiff contends would have put him in a position of power within the company and which plaintiff contends is therefore one of the reasons that Harris disliked him.  *Id.* at 145-48, 150.  He contends that after that, he "felt" like he was "being harassed by everybody" and was "treated like a dog."  *Id.*  Although plaintiff testified that he is unsure who the Program Manager spoke with after their conversation, he also testified that he "sensed" that he was being harassed after that.  *Id.* at 150.  He contends that "they" harassed him by "annoying the devil out of him every single day" and "finding little small things that [he] is not good at."  *Id.* at 143-44.  Plaintiff also admitted, however, that no particular person harassed him and that he is not sure what their motivation was.  *Id.* at 144, 151, 218.

////

1      Plaintiff has not shown that any of the conduct he alleges constituted harassment has any

2  connection to plaintiff's age or to his age discrimination complaint.  In fact, plaintiff testified in

3  his deposition that the alleged harassment was related to the bridge project – and therefore not

4  his age or the fact that he was pursuing an age discrimination complaint..[17]  *Id*. at 145 (When

5  asked if he believed that he was harassed because of his gray hair, plaintiff responded "No, not

6  because of my gray hair." "Let's go to the Red Sea crossing to understand what's going on

7  there." ).  Moreover, even if the conduct were connected to a protected characteristic, none of the

8  alleged conduct was sufficiently severe or pervasive to alter the conditions of his employment

9  and create an abusive work environment.  Therefore, defendant is entitled to summary judgment

10  on plaintiff's harassment/hostile work environment claim.[17]

11      C.      Plaintiff's Motion for Summary Judgment

12      Because the court finds that defendant is entitled to summary judgment, plaintiff's

13  motion for summary judgment should be denied.[18]

14  ////

---

16      [17] Additionally, as defendant notes, by failing to respond to defendant's Request for
Admissions Nos. 11-12, Cheng Decl. ¶ 3, Ex. B, plaintiff admitted that the purported harassment
was not related to his age.

18      [17] Defendant also contends that plaintiff failed to exhaust his harassment claim since he
did not include a harassment claim in his EEOC charge, and the harassment plaintiff alleges is
not reasonably related to the age discrimination allegations in that EEOC charge.  Dckt. No. 62-1
19  at 18 (citing Hart Dep. at 117-18 and Berry Decl. ¶ 24, Ex. G).  As discussed above, plaintiff's
harassment charges are not connected to his alleged age discrimination.  Therefore, it does not
20  appear that plaintiff properly exhausted his harassment claim.  *Kraus v. Presidio Trust Facilities
Division/Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009) (A "precondition to
21  filing [an employment discrimination suit] the complainant must seek relief in the agency that
has allegedly discriminated against him.");  *Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir. 1981)
22  ("Whether a plaintiff has in fact exhausted his or her administrative remedies depends on an
analysis of the 'fit' between the administrative charges brought and investigated and the
23  allegations of the subsequent judicial complaint.").  Regardless, even assuming the claim was
exhausted, defendant is entitled to summary judgment on plaintiff's harassment claim for the
24  reasons stated above.

25      [18] The motion should also be denied for failure to comply with this court's earlier orders,
Local Rules, and the Federal Rules of Civil Procedure.  *See* Dckt. Nos. 7, 24, 40, 61 (denying
26  plaintiff's previous motions for summary judgment).

IV.     <u>CONCLUSION</u>

In accordance with the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion for summary judgment, Dckt. No. 62, be granted;

2.  Plaintiff's motion for summary judgment, Dckt. No. 66, be denied; and

3.  The Clerk of Court be directed to enter judgment for defendant and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: June 8, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE